IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| JACKIE BARTON ) | |
| Plaintiff, ) | No. 08-cv-4510 |
| v. ) | Judge Robert W. Gettleman |
| CITY OF HARVEY, a municipal ) Corporation, ERIC KELLOGG, Mayor, and ) City Council members JULIUS PATTERSON, ) JOSEPH WHITTINGTON, DARYL CRUDUP, ) MICHAEL BOWENS, DONALD NESBIT and ) KEITH PRICE, Defendants ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Jackie Barton has filed a two-count complaint against his former employer, City of Harvey, a municipal corporation, Eric Kellogg, the Mayor of Harvey, and City Council members Julius Patterson, Joseph Whittington, Daryl Crudup, Michael Bowens, Donald Nesbit, and Keith Price, pursuant to 42 U.S.C. §§ 1983 and 1988. The complaint alleges that plaintiff was terminated from his position with the City of Harvey without proper cause and in violation of his First Amendment rights for his support of the mayor's political opponent (Count I) and for reporting alleged misappropriation of public funds (Count II). Defendants have moved to dismiss Count II and strike paragraph 6 and a portion of paragraph 9 of Count I on the ground that plaintiff has failed to state a violation of his First Amendment rights.1 Defendants have further moved to strike the official capacity claims brought against the individual defendants and the punitive damage claim against the City. Plaintiff voluntarily dismissed his punitive damage

---

1 Paragraph 6 and the last two sentences of paragraph 9 of Count I reference the factual allegations made in Count II, but do not directly support the claim in Count I.

claim against the City of Harvey and the official capacity claims against the individually named defendants. For the reasons discussed below, the court grants defendants' motion to dismiss Count II and to strike paragraph 6 and a portion of paragraph 9 of Count I.

## FACTS[2]

Plaintiff was employed by the City of Harvey as Parking Lot Administrator from approximately April 1995 until April 2003, and thereafter, as General Foreman of parking facilities until June 2007. As General Foreman, plaintiff's duties were to monitor employee time cards, monitor parking facilities, and collect and reconcile parking tickets with deposit slips. He claims that he was terminated on or about June 22, 2007, in retaliation for his political views and for alerting the city accountant to the possible misappropriation of public funds by a city employee.

Plaintiff's allegations stem from two underlying events. First, during the mayoral election cycle of 2007, plaintiff supported Mayor Kellogg's opponent. After plaintiff's dismissal, plaintiff was told by "certain city officials" that he was fired because he had been seen at the rival's campaign headquarters. Second, shortly before plaintiff was fired, he reported to a city accountant his suspicions that the individual "handpicked by the mayor" to take money from parking lot cashiers and deposit it into the bank was misappropriating funds. Specifically,

---

[2] The facts alleged in the complaint are taken as true for purposes of the instant motion, Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). Plaintiff has supplemented the facts in the original complaint with an affidavit in support of his response to the instant motion. Of course, ordinarily an affidavit cannot supplement the pleadings on a Rule 12(b) motion, but here, defendant has made no objection to the facts included in plaintiff's affidavit. Therefore, the court will consider these supplemental facts.

2

plaintiff told the city accountant that there were discrepancies between the amount of cash entrusted to this employee and the corresponding bank deposit receipts. Additionally, plaintiff relayed that the employee did not proceed directly to the bank upon receiving the cash from the parking lot cashiers. According to plaintiff, after this conversation the city accountant reported these allegations to Mayor Kellogg who later ordered plaintiff's firing.

DISCUSSION

At issue in the instant motion is whether plaintiff's statements to the city accountant were protected by the First Amendment. Defendants assert that plaintiff's speech is not protected under Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951 (2006), because he spoke out as a City of Harvey employee, rather than as a private citizen. Plaintiff counters that his speech is protected because he spoke as a citizen on matters of public concern outside of the duties of his employment.

*Legal Standard*

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. See McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006). The complaint must, nevertheless, plead sufficient facts to suggest plausibly that the plaintiff is entitled to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, __ , 127 S.Ct. 1955, 1965 (2007).

Under Fed. R. Civ. P. 12(f) the court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Immaterial matter is defined as that which has no relationship to the cause of action pled. Motions to strike are generally not favored, and the court will not strike matter from a complaint "unless it is clear that it can have no possible bearing on the matter of the litigation." 2A Moore's Federal Practice ¶ 12.21[2], at 12-175 (2d ed. 1987)

The right of a government employee to speak as a citizen about matters of public concern is protected by the First Amendment. Houskins v. Sheahan, 549 F.3d 480, 489 (7th Cir. 2008). To assert a claim of First Amendment retaliation pursuant to § 1983, the plaintiff must allege that: "(1) his speech is constitutionally protected; (2) he suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the employer's action." George v. Walker, 535 F.3d 535, 538 (7th Cir. 2008). The Supreme Court has held that the First Amendment does not protect speech made by public employees as part of their official duties, and "the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960 (2006). Therefore, the preliminary question in any First Amendment retaliation case is whether the plaintiff made the statement "as a citizen" or "pursuant to [his] official duties." Garcetti, 547 U.S. at 421; see Spiegla v. Hull, 481 F.3d 961, 965 (7th Cir. 2007) ("Spiegla II") (clarifying that prior to Garcetti 'content, form, and context' of the employee's speech was first considered in determining whether the employee spoke as a citizen on a matter of public concern, but after Garcetti, "the threshold inquiry is whether the employee was speaking as a citizen."). The Seventh Circuit has clarified that at the pleading stage a plaintiff cannot satisfy the holding of Garcetti by merely

4

"including in her complaint the conclusory legal statement that she testified 'as a citizen ... outside the duties of her employment.'" Tamayo v. Blagojevich, 526 F.3d 1074, 1092 (7th Cir. 2008). Therefore, in evaluating a complaint, the court must take "a 'practical' view of whether an employee is speaking as an employee or as a citizen." Id. at 1092.

In the instant case, plaintiff spoke as a public employee and not as a citizen. Plaintiff's duties as a General Foreman were to monitor employee time cards, monitor parking facilities, and collect and reconcile parking tickets with deposit slips. Plaintiff claims that since he had no direct responsibilities for the supervision of the city's three pay parking lots, or any specific duties for handling money collected in these lots, it was not within his official duties to report the possible misappropriation of public funds to the city accountant. Plaintiff further argues that he was speaking as a citizen because he did not have a specific duty to report to the city accountant, the accountant was an independent contractor, and the conversation happened outside of normal work hours among friends.

Plaintiff's arguments are unpersuasive. Although reporting the alleged misappropriation may not have been among plaintiff's core job functions, it was certainly among his general responsibilities as the employee charged with reconciling parking tickets with bank slips. See, eg., Trigillo v. Snyder, 547 F.3d 826, 829 (7th Cir. 2008) (corrections officer spoke as a public employee even though she "went beyond her normal day-to-day duties" in reporting misconduct to the Illinois Attorney General since she was fulfilling her "obligation to oversee the department's procurement transactions"); Davis v. Cook County, 534 F.3d 650 (7th Cir. 2008) (nurse's memo to supervisor expressing concerns with patient care and doctor conduct was speech as an employee, not as a citizen); Vose v. Kliment, 506 F.3d 565 (7th Cir. 2007)

(narcotics officer's report about misconduct in a separate police unit, while "above and beyond his routine duties," was general work duty and constituted speech as an employee, not as a citizen).

Further, plaintiff concedes that he could not report his concerns up the chain of command because it was his direct supervisor that was committing the alleged misappropriation, and the next person in charge was that supervisor's father. Under the circumstances, it was necessary for plaintiff to report his suspicions to another city employee or agent outside the normal chain of command. See, e.g., Tamayo, 526 F.3d at 1091-92 (state gaming board employee's public testimony to state committee critical of governor's interference in gaming operations was speech as an employee, not as a citizen); Spiegla v. Hull, 481 F.3d 961, 965 (7th Cir. 2007) (state prison employee's report of other employees' suspect conduct to an assistant superintendent was made pursuant to a duty to inform her superiors of a possible breach in prison policy.). The city accountant was the logical person with whom to speak given the nature of the concern and the fact that the city accountant could investigate the allegations independently. Had plaintiff made a public statement about the perceived corruption, written a letter to a local paper or outside agency, or otherwise spoke out as a citizen, his speech would likely qualify as public. See Garcetti, 547 U.S. at 422 ("employees retain the prospect of constitutional protection for their contributions to the civic discourse"); see, eg., Rankin v. McPherson, 483 U.S. 378 (U.S. 1987) (clerical employee in constable's office spoke as a citizen when she expressed, in a private
conversation with a co-worker, hope that the President would be assassinated); Pickering v. Bd. of Educ., 391 U.S. 563 (1968) (teacher spoke as citizen when he sent letter-to-the-editor to the local newspaper criticizing board of education for its handling of revenue proposals); Davis v.

McKinney, 518 F.3d 304 (5th Cir. 2008) (university information systems employee spoke as a citizen when she sent letters to the EEOC and the FBI alleging workplace misconduct); Fuerst v. Clarke, 454 F.3d 770, 774 (7th Cir. 2006) (deputy sheriff spoke as citizen because he made a public statement as a union representative concerning a personnel issue); Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006) (correctional officer spoke as a citizen when she sent a letter to a state senator and incident reports to the California Inspector General).

Therefore, because plaintiff spoke as a public employee and not as a citizen, his speech is not protected by the First Amendment.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss Count II and to strike paragraph 1 and the last two sentences of paragraph 9 of Count I is granted. By agreement the official capacity claims against the individual defendants and the punitive damages claim against the City of Harvey are dismissed. This matter is set for a report on status on February 25, 2009, at 9:00 a.m.

January 28, 2009

ENTER:

/s/ Robert W. Gettleman

United States District Judge